IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

KATINA JONES,

                Plaintiff,                Case No. 3:05 CV 7424

    -vs-

                                            <u>MEMORANDUM OPINION</u>

PERRYSBURG MUNICIPAL COURT,
et al.,

                Defendant.

KATZ, J.

This matter is before the Court on Defendants' motion for reconsideration and notice of supplemental authority. (Doc. 33). For the reasons enumerated herein, that motion is granted.

**I. Background**

Katina Jones ("Plaintiff" or "Jones") comes before this Court alleging that her constitutional rights were violated on November 9, 2003 when a bench warrant for her arrest was issued by the Perrysburg Municipal Court. Jones named Judge S. Dwight Osterud, presiding judge at Perrysburg Municipal Court, and Janice Elkes ("Clerk Elkes"), the Clerk of Perrysburg Municipal Court, as defendants in their official capacities. Jones also named the city of Perrysburg ("Perrysburg") and Perrysburg Municipal Court ("PMC") for maintaining policies or practices in violation of Ohio and federal law. Judge Osterud, Clerk Elkes, Perrysburg, and PMC are collectively referred to herein as "Defendants."

A factual issue is before this Court as to the reason for Plaintiff's arrest. Jones alleges that it was a result of her failing to pay court costs and fines. Defendants argue that Jones was arrested for her failure to appear in court for her ordered hearing on October 3, 2003. Jones was

held overnight in violation of her probation and subsequently spent 90 days in Wood County jail which she served in full. Jones' October 3, 2003 hearing related to her payment of court costs which had been ordered as part of a previous criminal sentence.

Plaintiff seeks to recover under 42 U.S.C. §§ 1983 and 1985 for alleged violations of the Fourth, Thirteenth, and Fourteenth Amendments to the United States Constitution. Defendants assert that the *Rooker-Feldman* doctrine divests this Court of jurisdiction to hear this case after Jones lost in state court. Defendants also assert Judge Osterud and Elkes have absolute immunity and may not be sued in their official capacities. Furthermore, defendants assert that Perrysburg and PMC are not "persons" subject to suit under the civil rights statutes at issue.

On June 29, 2006, this Court granted Defendants' January 23, 2006 motion to dismiss and motion for judgment on the pleadings (Doc. No. 16) with respect to money damages but allowed Plaintiff's claims for injunctive relief to proceed with discovery. Plaintiff filed a motion for reconsideration on July 5, 2006. After taking into account both parties' briefs, this Court hereby grants the motion for reconsideration.

**II. Standard for reconsideration**

This Court may, in its discretion, grant a motion for reconsideration if any of the following three situations occur: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or to prevent manifest injustice. *Plaskon Electronic Materials, Inc. v. Allied-Signal, Inc.* 904 F.3d Supp. 644, 669 (N.D. Ohio 1995) *citing Birmingham v. Sony Corp. of America, Inc.*, 820 F.Supp. 834, 856 (D.N.J. 1992), *aff'd*, 37 F.3d 185 (3d Cir. 1993).

### III. Standard of review

The federal district courts possess broad subject matter jurisdiction; they may even be empowered to adjudicate cases concurrently with the state courts. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280 (2005). "The jurisdiction possessed by the District Courts is strictly original[,]" however, not appellate. *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416 (1923). With few exceptions, such as their power to issue writs of habeas corpus, they are without power to review decisions rendered by state courts. *See Exxon Mobil,* 125 S.Ct. at 1521 ("Appellate jurisdiction to reverse or modify a state-court judgment is lodged . . . exclusively in [the Supreme] Court."). Federal jurisdiction over appeals from state courts is vested exclusively in the United States Supreme Court by 28 U.S.C. § 1257.

### IV. Discussion

#### A. Subject matter jurisdiction: the *Rooker-Feldman* doctrine

The *Rooker-Feldman* doctrine maintains the jurisdictional distribution in the federal courts by insuring that the federal district courts exercise only original jurisdiction. *See generally Dist. of Columbia Ct. of App. v. Feldman,* 460 U.S. 462 (1983) (establishing a jurisdictional doctrine to prevent federal district courts from exercising appellate jurisdiction); *Rooker,* 263 U.S. at 413 (same). The doctrine divests federal district courts of subject matter jurisdiction in cases where they are called upon to review state court judgments. *See Exxon Mobil,* 544 U.S. at 293. In other words, "federal district courts lack jurisdiction over suits that are, in substance, appeals from state court judgments." *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005); *see also Twin City Fire Ins. Co. v. Adkins,* 400 F.3d 293 (6th Cir. 2005) (explaining that federal district courts lack jurisdiction over challenges to

state court decisions). The purpose of the *Rooker-Feldman* doctrine is to preclude a United States district court from exercising appellate jurisdiction over a state court judgment in an action it would otherwise be empowered to adjudicate only under some congressional grant of authority (as in habeas cases). *Exxon Mobil,* 544 U.S. at 291. In both *Rooker* and *Feldman*, the losing party in state court filed a suit in federal court after the state proceedings ended, complaining of injuries caused by the state court judgment. *Id*.

In the case before this Court, both parties cite and discuss numerous lower federal court cases, many of which were decided before the recent United States Supreme Court decision in *Exxon Mobil Corp. v. Saudi Basic Ind. Corp.*, supra. This Court will pay particular attention to the Supreme Court's observation that "the lower federal courts have variously interpreted the *Rooker-Feldman* doctrine to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law under 28 U.S.C. § 1738." *Id*. at 283. *Exxon* and its progeny are instructive with regard to the proper application of the *Rooker-Feldman* doctrine.

In *Exxon*, the United States Supreme Court clarified the reach of the *Rooker-Feldman* doctrine by narrowing its application to its original intent:

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries *caused by state-court judgments* rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

*Id*. at 284 (emphasis added). Furthermore, the Sixth Circuit elaborated on *Exxon*:

4

> Scaled back to its core, the *Rooker-Feldman* doctrine divests federal district courts of jurisdiction only in cases where the prior state court proceedings were *judicial in nature*, *as opposed to legislative or ministerial* and where federal claims require *review of a judicial decision in a particular case*. Accordingly, the federal district courts lack jurisdiction over two types of cases originating in state court: (1) cases where appellate remedies have been exhausted in state court and issues raised and decided in the state courts are presented to the federal district courts for reconsideration; and (2) cases where the federal claims asserted turn so directly on state court judgments that the federal district courts must review the state court judgments to resolve the federal claims.

*Johnson v. Ohio Supreme Court*, 156 Fed. Appx. 779, 782 (6th Cir. 2005) (internal citations and quotations omitted) (emphasis added). However, "[i]f a federal plaintiff present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Exxon*, 544 U.S. at 293 (*quoting Gash Assocs. v. Village of Rosement*, 995 F.2d 726, 728 (7th Cir. 1993)); accord *Noel v. Hall*, 341 F.3d 1148, 1163-64 (9th Cir. 2003).

This case does not fall under the first category of cases in *Johnson* because the Plaintiff has not exhausted her appellate remedies in state court. Nowhere in the record does it indicate that Plaintiff appealed Judge Osterud's decision to the state court of appeals. However, this case falls under the second category of *Johnson* cases because, like the case in *Johnson*, review of Plaintiff's § 1983 claim would require this court to "'engage in prohibitive appellate review' of judgments by state courts . . . to determine if they violated [the party's] constitutional rights." *Johnson* 156 Fed. Appx. at 782-83. This court can never "review . . . a judicial decision in a particular case, even if the 'state-court judgment [allegedly] was rendered in contravention of the Constitution." *Id.* at 783 (internal citations omitted). "Only the United States Supreme Court has the jurisdiction to determine if a state court judgment violates an individual's constitutional

5

rights." *Id*. at 783. Here, Plaintiff asks this Court to review the prior state court judgment of Judge Osterud in PMC to determine whether there is a pattern or practice of imprisoning defendants for failure to pay fines or costs in connection with criminal cases where those fines and costs have been assessed. This Court does not have jurisdiction to do so because Plaintiff's § 1983 claim would require this Court to engage in appellate review.

However, it is important to note that a court may hold that the *Rooker-Feldman* doctrine divests a court of subject matter jurisdiction over some claims, but not others. *See, e.g.*, *McCormick v. Braverman*, 2006 U.S. App. LEXIS 15074 at *25-34 (6th Cir. 2006). Plaintiff can escape the grasp of the *Rooker-Feldman* doctrine if she can prove the prior state court proceedings were not judicial in nature. A state court decision is judicial in nature only where the state court's action involves a "'judicial inquiry' in which the court was called upon to investigate, declare, and enforce 'liabilities as they [stood] on present or past facts under laws supposed already to exist. . . ."  *Johnson*, 156 Fed. Appx. at 783 (citing *Dist. of Columbia Ct. of App. v. Feldman*, 460 U.S. 462, 479 (1983)). Furthermore, the *Rooker-Feldman* doctrine does not divest the federal district courts of jurisdiction over suits seeking review of administrative, ministerial, or legislative actions taken by state courts. *Id*. at 476-77.

In other words, the *Rooker-Feldman* doctrine is not applicable where a state-court loser asserts an independent claim. "If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *McCormick v. Braverman,* 451 F.3d at 393. "The key point is that the

source of the injury must be from the state court judgment itself; a claim alleging another source of injury is an independent claim." *McCormick,* 451 F.3d at 394.

This Court must examine Plaintiff's complaint to determine whether the prior state court proceeding is judicial in nature or if Plaintiff's claims are independent. Courts have analyzed the application of the *Rooker-Feldman* defense by focusing on the source of the injury alleged by the plaintiff. *See Glenn v. Clement Twp.*, 2006 U.S. Dist. LEXIS 51461 (E.D. Mich. 2006). However, merely phrasing a complaint as seeking redress for an injury caused by the defendant's actions (as opposed to a state court decision) is not enough; if the defendant's actions are the product of the state court judgment, then the plaintiff's challenge of those actions is in fact a challenge of the judgment itself, and therefore, is barred under *Rooker-Feldman*. *McCormack* 451 F.3d at 394; *see also Fieger v. Ferry*, 471 F.3d 637 (6th Cir. 2006) (holding that Fieger's federal complaint was barred by the *Rooker-Feldman* doctrine to the extent that he sought a declaration that the defendant Justices violated his constitutional rights when they refused to recuse themselves from his prior cases because such a declaration would require the federal court to review the Justices' past recusal decisions).

Here, the Plaintiff in her complaint alleges: (1) her arrest and incarceration constituted an unconstitutional seizure and detention in violation of the Fourth Amendment, Doc. 1-1 at ¶ 29; (2) her arrest and incarceration constituted imprisonment for debt violating the Thirteen Amendment, *id*. at ¶ 30; (3) failure to conduct a hearing or inquiry on her ability to pay court costs before incarcerating her for non-payment violated the Fourteenth Amendment, *id*. at ¶ 31; and (4) failure to give her any credit towards payment of court costs as a consequence of her incarceration violated the Fourteenth Amendment, *id*. at ¶ 32.

The source of Plaintiff's alleged injuries stem from four actions: arrest; incarceration; failure to conduct a hearing; and failure to credit her court-costs debt. These actions were judicial in nature because they involved state court decisions where the court acted to "investigate, declare, and enforce liabilities." The *Rooker-Feldman* doctrine operates to divest the federal district court of jurisdiction over those claims. *See Central Ohio Alternate Program v. Ballinger, et al.*, 2007 U.S. Dis. LEXIS 19551 (N.D. Ohio 2007); *Bedree v. Lebamoff*, 202 Fed. Appx 913, 915-16 (7th Cir. 2006); *Panos v. Supreme Court of Utah*, 198 Fed. Appx. 692 (10th Cir. 2006); *Levine v. Lawrence*, 2005 U.S. Dist. LEXIS 1163 (E.D.N.Y. 2005).

### B. Incarceration resulted from Jones' failure to appear at hearing

Plaintiff correctly asserts that contempt proceedings for failure to pay a civil debt are inappropriate. However, contempt proceedings are appropriate when a person fails to appear at an ordered court hearing. Ohio Rev. Code § 2705.02(A). This Court, after reviewing the record, believes that Judge Osterud ordered Jones to be incarcerated as a result of her failure to appear and not as a result of her failure to pay court costs as discussed herein.

The September 18, 2003 docket entry for Jones' criminal case in Perrysburg Municipal Court states: "CASE SET FOR PAYMENT ON 10/03/2003 AT 11:00 AM." Doc. 16-2 at 2. A letter also dated September 18, 2003 sent to Jones from the deputy clerk states that a total balance of $166.00 is past due; that payment in full or monthly installments of $20 is necessary by 11:00 a.m., October 3, 2003; and that "FAILURE TO COMPLY BY THIS DATE WILL RESULT IN THE AUTOMATIC ISSUANCE OF A BENCH WARRANT. . . ." Doc. 16-3 at 98. On October 28, 2003, Judge Oseterud issued a bench warrant stating that Jones "IS IN CONTEMPT OF COURT IN VIOLATION OF SECTION 2705.02 ORC FTA 10-3-03 FOR

8

PAYMENT OF FINES & COSTS." *Id.* at 99. The words "FAILURE TO APPEAR" are printed alone and centered on the next line of the warrant. *Id*. The docket entry for that same day states: "WARRANT WAS ISSUED FOR DEFENDANT FOR FTA 10-3-03 PYMT." Doc. 16-2 at 2.

The weight of the evidence indicates that Jones' incarceration occurred as a result of failing to appear and not failure to pay court costs and fines. All evidence leads to this conclusion except for the September 18, 2003 letter from the deputy clerk. The letter from the deputy clerk suggests that Jones' failure to comply with the request to pay her total balance in full or by monthly installments of $20 would result in an "automatic issuance of a bench warrant." However, the words "failure to comply by this date" do not refer to an automatic issuance of a bench warrant for failing to pay court costs but rather the compliance refers to appearing before the court as ordered by Judge Osterud. This conclusion is supported by the notes contained in the document entries ("contempt of court in violation of section 2705.02A ORC FTA 10-3-03," "failure to appear," and "warrant was issued for defendant for FTA 10-3-03 pymt."). Furthermore, even if this Court were to agree that the letter from the deputy clerk indicated that Jones would be incarcerated if she did not comply with full payment or monthly installments, then Judge Osterud's actions did not conform to this theory. The deputy clerk's letter acts as an informative document and not a final judgment. The letter acted as a warning to Jones describing PMC's expectations of her and the consequences of failing to meet them. Jones' incarceration was not the result of the deputy clerk's letter, but rather Judge Osterud's order after Jones failed to appear for her October 3, 2003 hearing. Jones states in her memorandum opposing dismissmal that "when Plaintiff did not appear, a warrant was issued for her arrest." This Court agrees with that assessment.

Jones might have a stronger claim if she took the deputy clerk's letter as a warning and appeared on October 28, 2003 regardless of whether she could pay in full or in monthly installments. If Judge Osterud then ordered Jones to be jailed because she could not pay her civil debt, then this claim might have been appropriate. This Court is not persuaded by the record that if Jones were to have appeared before Judge Osetrud on October 28, 2003 she would have been incarcerated. By Jones not appearing before the court on October 28, 2003, she violated Ohio Rev. Code § 2705.02(A) and Judge Osterud's issuance of a bench warrant due to Jones' failure to appear was appropriate.

### C. Defendants' susceptibility to injunctive relief

Defendants argue that absolute judicial immunity precludes Plaintiff's claims for injunctive relief. The Court will address each relevant party to determine whether judicial immunity applies.

#### 1. Judge Osterud

42 U.S.C. § 1983 expressly immunizes judicial officers against suits for injunctive relief. Amended by the Federal Courts Improvement Act of 1996, ("FCIA"), § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless (1) a declaratory decree was violated or (2) declaratory relief was unavailable." 42 U.S.C. § 1983. Courts have held that claims against judges for injunctive relief are "unavailing" if neither of these two exceptions are met. *Massey v. Stosberg*, 2005 U.S. App. LEXIS 1252 at *4 (6th Cir. 2005) (citing *Montero v. Travis*, 171 F.3d 757, 761 (2nd Cir. 1999)). Furthermore, immunity for injunctive relief under § 1983 only applies to judicial officers acting in a judicial capacity. *See, e.g., LeClerc v. Webb*, 419 F.3d

10

405, 414 (5th Cir. 2005). To determine whether an act is "judicial," courts "examine 'the nature and function of the act, not the act itself,'" *Triplett v. Connor,* 109 Fed. Appx. 94, 96 (6th Cir. 2004) (internal quotation omitted), and consider "'whether the judge's act is a function normally performed by a judge, and to the expectations of the parties.'" *Mireles v. Waco*, 502 U.S. 9, 12 (1991) (internal quotation omitted).

Here, Judge Osterud was acting in his judicial capacity when he undertook the judicial functions alleged in Jones' complaint. *See* Doc. No. 1-1 at ¶ 22. Furthermore, the two § 1983 exceptions are inapplicable because Jones "is not entitled to injunctive relief under the circumstances of this case since [s]he neither alleges that a declaratory decree was violated nor alleges that declaratory relief was unavailable, as required by § 1983." *Kibbe v. Deegan*, 1999 U.S. App. LEXIS 29779 at *5-6 (6th Cir. 1999). Other circuit courts of appeal have also held that a plaintiff must allege both § 1983 exceptions when bringing a claim for injunctive relief against a judge. *See Hodges v. Morgano*, 28 Fed. App.x 75, 77 (2d Cir. 2002); *Shelton v. Seay*, 1999 U.S. App. LEXIS 32062 (10th Cir. 1999); *but see also Williams v. Carney*, 157 Fed. Appx. 103, 105 (11th Cir. 2005) (holding that § 1983 declaratory relief is unavailable if the plaintiff "failed to allege what serious risk of continuing irreparable injury he faced absent such relief"); *Brandon v. Reynolds*, 201 F.3d 194, 198 (3d Cir. 2000) (describing the legislative history of the FCIA and stating that whether declaratory relief is available against a judge turns on whether the judge may properly be named as a defendant to the § 1983 action). Therefore, because Jones does not allege either that a declaratory decree was violated or that declaratory relief was unavailable, then it is presumed that Judge Osetrud was acting in his judicial capacity and is immune from injunctive relief.

**2. Clerk Elkes**

Defendants argue that Clerk Elkes has absolute quasi-judicial immunity precluding claims of injunctive relief against her. Doc. 33-2 at 4. In the Sixth Circuit, "it is settled that judicial immunity, which has historically protected judges . . . also attaches to public officials who perform quasi-judicial duties." *Campbell v. Patterson,* 724 F.2d 41, 43 (6th Cir. 1983) (internal citation omitted). Furthermore, the United States Supreme Court has held that absolute immunity does not extend to all positions simply "because they are 'part of the judicial function.'" *Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 435 (1993) (internal citations omitted) (holding court reporters are not protected by judicial immunity because they are afforded no discretion in carrying out their duty). "When judicial immunity is extended to officials other than judges, it is because their judgments are functionally comparable to those of judges – that is, because they, too, exercise a discretionary judgment." *Id*. at 436. The Sixth Circuit has not directly addressed *Antoine*'s holding, although it has cited *Antoine* with approval for other reasons. *See, e.g.*, *Brookings v. Clunk*, 389 F.3d 614 (6th Cir. 2004); *Barnes v. Winchell*, 105 F.3d 1111 (6th Cir. 1997). The Seventh Circuit, in discussing *Antoine*, has explained that judicial immunity is extended to non-judges in only two circumstances: (1) when non-judicial officers' judgments are functionally comparable to those of judges; and (2) when functions that are more administrative in character have been undertaken pursuant to the explicit direction of a judicial officer. *Snyder v. Nolen*, 380 F.3d 279, 286-90 (7th Cir. 2004).

Jones is suing Clerk Elkes in her official capacity. She complains that Elkes records non-payment of fines and court costs without first differentiating between them, which "facilitates or results in arrests, warrants for arrest, and incarceration of persons liable only for court costs in

violation of Ohio [and federal] law. . . " Doc. 1-1 at ¶ 35. Applying the Seventh Circuit's two-prong test in *Snyder*, Clerk Elkes is judicially immune because her administrative functions have been undertaken pursuant to the explicit direction of Judge Osterud. Jones acknowledges this role in her complaint when she alleges Elkes has the "duty, authority, and responsibility to adopt, implement, and establish the policies, practices, customs, and usages pursuant to her duties." *Id.* at ¶ 24. Furthermore, in *Foster v. Walsh*, the Sixth Circuit held that a municipal court clerk enjoyed absolute immunity regarding the improper, yet "non-discretionary," issuance of a warrant. 864 F.2d 416, 418 (6th Cir. 1988). Therefore, this Court holds that Clerk Elkes is also immune to injunctive relief.

### 3. City of Perrysburg

"[A] municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'" *Kanavos v. Harderman*, 1988 U.S. App. LEXIS 20800 at *23 (6th Cir. 1998) (internal citations omitted). No evidence of such a link between the City of Perrysburg and Plaintiff's injuries have been shown here. The city is therefore not subject to liability.

### 4. Perrysburg Municipal Court

A Municipal Court cannot be liable for injunctive relief because it is not *sui juri*, an entity capable of being sued. "Absent express statutory authority, a court can neither sue nor be sued in its own right." *Malone v. Court of Common Pleas*, 344 N.E.2d 126, 28 (Ohio 1976) (quoting *State, ex rel. Cleveland Mun. Court v. Cleveland City Council*, 296 N.E.2d 544, 546 (Ohio 1973)). As such, Perrysburg Municipal Court is not an entity capable of being sued and thus cannot be liable for injunctive relief.

**D. Declaratory judgment against Judge Osterud**

Jones is not entitled to a declaratory judgment against Judge Osterud because no case or controversy exists. 42 U.S.C. § 1983 recognizes the possibility of declaratory relief against a judge, but that relief is only an option when a case or controversy actually exists. *Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) (Pursuant to Article III, Section 2 of the Constitution, to be heard in federal court, a "controversy" must exist between the litigants). As stated above, Jones' complaints are related to the *Rooker-Feldman* doctrine – a lack of jurisdiction – in that Judge Osterud ordered Jones incarcerated because she failed to appear and not because she failed to pay court costs. This is a jurisdictional issue, and there is no cognizable case or controversy between Judge Osterud and Plaintiff. *See In re Justices of the Supreme Court of Puerto Rico*, 695 F.2d 17, 21 (1st Cir. 1982).

**V. Conclusion**

For the reasons enumerated herein, the Court grants Plaintiff's motion for reconsideration and notice of supplemental authority (Doc. 33), and further will grant the original motion to dismiss (Doc. No. 16).

IT IS SO ORDERED.

                                                            s/ *David A. Katz*
                                                     DAVID A. KATZ
                                                     U. S. DISTRICT JUDGE